230 BRISTOL.

Durfee *v.* Old Colony and Fall River Railroad Company & others.

---

BRADFORD M. C. DURFEE *vs.* OLD COLONY AND FALL RIVER RAILROAD COMPANY & others.

A stockholder in a corporation, the charter of which, by *St.* 1830, *c.* 81, is subject to alteration, amendment or repeal, at the pleasure of the legislature, cannot maintain a bill in equity to restrain the corporation from engaging in a new enterprise, in addition to that contemplated by the charter, but of the same kind, if it is sanctioned by an express legislative grant, and by a vote of the majority of the stockholders.

A lease by the Newport and Fall River Railroad Company, a corporation established under the laws of Rhode Island, to the Old Colony and Fall River Railroad Company, a corporation established under the laws of this commonwealth, of the unfinished railroad of the former corporation, situated in Rhode Island, for a term of years, at an annual rent after the same shall have been completed, with a stipulation for the payment in advance of the rent for the whole term, to be used for the purpose of building the road and putting it in order for use, is not a violation of *St.* 1861, *c.* 156, which authorizes the latter corporation to extend their railroad to the line of Rhode Island, to connect with a railroad to be constructed from Newport, Rhode Island, to the line of Massachusetts, and provides that no part of their present reserved funds shall be appropriated to build any portion of the road in Rhode Island.

BILL IN EQUITY brought by the plaintiff, a minor, by John S. Brayton, his guardian, to restrain the defendants, a railroad corporation established under the law of this commonwealth, and the directors thereof, from proceeding to act under *St.* 1861, *c.* 156, authorizing them to extend their railroad to the line of the State of Rhode Island, or under *St.* 1862, *c.* 149, authorizing their union with the Newport and Fall River Railroad Company.

The bill alleged in substance that by sundry acts of the gen eral court the defendant railroad company were established as a corporation and authorized to construct a railroad from Fall River to Boston ; that the plaintiff is the owner of three hundred and thirty-nine shares of their capital stock ; that they, in and by their business over their road, have accumulated a surplus fund of over $700,000 ; that the plaintiff has a vested interest in his proportionate share thereof; that they have no right, without his consent, to divert their income or surplus fund, or employ it in a new and hazardous enterprise and speculation, different from that set forth in the acts establishing them as a corporation, or to lend their funds to or unite with another railroad company; that in conformity with a previous vote, and against his protest, they presented a petition to the legislature for authority to build a railroad from Fall River to Newport, Rhode Island ; that the Newport and Fall River Railroad Company, a corporation established by the legislature of Rhode Island, were authorized to build a railroad in that state from Newport to the line of Massachusetts, to connect with a railroad which might be constructed in Massachusetts to the same point; that in May 1860 the Newport and Fall River Railroad Company were authorized to unite with a corporation which might be empowered in this commonwealth to build such railroad; that thereafter *St.* 1861, *c.* 156, was passed, authorizing the defendant railroad company to extend their railroad to the line of the state of Rhode Island ;* that this statute

---

* The material portions of this statute are as follows :

" Section 1.   The Old Colony and Fall River Railroad Company are hereby authorized to extend, locate, construct and maintain a railroad from a point at or near the present terminus of its [their] track in Fall River, in a southerly direction, to the line of the state of Rhode Island, to connect with a railroad to be constructed from Newport, in the state of Rhode Island, to the line of the state of Massachusetts, and for that purpose shall have all the powers and privileges, and be subject to all the duties, liabilities and restrictions set forth in the General Statutes, relating to railroad corporations. . . . .

" Section 2.   No part of the present reserved funds of said Old Colony and Fall River Railroad Company shall be appropriated to build the extension hereby authorized. or to build any portion of the road in Rhode Island.   The capita:

was accepted at a special meeting of their stockholders, the plaintiff protesting and voting against such acceptance; that they have filed the location of the extension of their road, under said statute; that, in conformity with a petition by them, *St.* 1862, *c.* 149, was passed, authorizing them to unite with the Newport and Fall River Railroad Company, and providing that if the two corporations should vote to unite and form one corporation, the directors of the defendant railroad company should forthwith cause a meeting to be called of the stockholders in the new corporation, for choice of officers; and that their directors have called a meeting of stockholders to act upon the question of accepting *St.* 1862, *c.* 149, and, under a vote of the stockholders, have issued bonds to the amount of $400,000, and with the proceeds thereof are now building the extension of their railroad not only to the line of Rhode Island, but to Newport, either by assuming the work themselves, or by lending their funds or credit. The prayer was for an injunction restraining the defendant railroad company from applying their funds or pledging their credit for the purposes set forth, and from uniting with the Newport and Fall River Railroad Company, and restraining their directors from causing a meeting of the stockholders of such new corporation to be held for the choice of officers, and for further relief.

The answer of the defendant railroad company alleged that their corporation was formed and created by a number of smaller railroads, chartered for shorter routes, being united for the public good into one, and that these unions were authorized by acts similar to the one now in controversy, and were effected by

stock of said corporation may be increased not to exceed two thousand shares. . . . .

" Section 3. The Old Colony and Fall River Railroad Company is [are] hereby authorized to enter upon and connect with any railroad authorized by the legislature of Rhode Island to be built from Newport to the state line of Massachusetts, and shall have all the powers, rights and privileges in reference to said connection with said railroad in Rhode Island, as [which] are provided by law for railroads entering upon and connecting with each other in this commonwealth."

majority votes merely; that the bulk of the plaintiff's shares were held by him by reason of his having been an owner of shares in one of said smaller railroads, and that the purchase of the residue was made with knowledge of the intention of the corporation to extend their road to Newport, and of proceedings pending for that purpose; denied any loan of their credit or funds to any other railroad company, or any intention to employ their funds in any hazardous enterprise, contrary to law, or that the acts of the general court referred to depend for their validity upon the plaintiff's consent; admitted the accumulation of a surplus fund, and the various corporate and legislative proceedings, as alleged, and the issue of bonds to the amount of $219,000, but not of $400,000, and denied the alleged use of the proceeds thereof; admitted that they have aided the Newport and Fall River Railroad Company in constructing their railroad, but alleged that such aid has been rendered only in accordance with an indenture entered into between the two corporations, the material parts of which are copied in the margin,* in pursuance of which they have advanced the sum of $200,000.

---

* This indenture, made on the 23d of January 1862, after recit.ng the location by the Newport and Fall River Railroad Company of the railroad authorized by their charter, so as to connect at the boundary line between Massachusetts and Rhode Island with the extension of the railroad of the Old Colony and Fall River Railroad Company, and providing that the former company should deliver up their whole railroad and property to the latter company, for the term of ten years, to use, run, operate, control and administer, fully and in all respects, and that the latter company should perform all the transportation of persons and freight on and over the same, and pay the sum of $30,000 per year, during the continuance of the agreement, after the railroad and track should be fully laid and finished, ready for the running of trains, said payments to be made semiannually, contained the following provisions:

"And it is hereby further agreed between the parties hereto, that the party of the first part shall have the right to call or require from the party of the second part the payment in advance of the semi-annual payments hereinbefore provided to be made by said party of the second part for the purposes of building and completing said road for use, and for no other use or purpose, to the amount of three hundred thousand dollars, provided said advanced payments are required within fifteen months from the date hereof, and the party of the second part

20 *

The railroad company also demurred to the bill for multifariousness, and the directors demurred on the ground that they were improperly joined as parties.

The case was heard upon the bill, answer and demurrers, before the chief justice, and reserved for the determination of the whole court. The arguments upon the questions of jurisdiction and pleading are omitted.

*C. I. Reed,* (*E. Ames* with him,) for the plaintiff. The question to be determined in this case is, whether, after a stockholder in a corporation has investigated the scheme stated in the charter, and become satisfied that the enterprise will be safe, and invested his money in it, a majority of the stockholders may against his will change the corporate purposes, either with or without legislative sanction, and apply his funds to the promotion of an enterprise in which he has no faith. This is what *St.* 1861, *c.* 156, authorizes to be done.

No legislative sanction could give authority to a majority of the partners in a firm, or the members of a voluntary association,

---

hereby agrees with the party of the first part, that they will pay in advance the sums provided by this contract by them to be paid, to the amount of three hundred thousand dollars, in such sums as shall be required from time to time by the party of the first part within fifteen months from the date hereof, and which sums shall be necessary and used for the purpose of building said road of the party of the first part, and putting it in perfect order for use, and for no other purpose.

" And it is hereby further agreed between the parties hereto, that if such payments are made in advance as aforesaid by the party of the second part, it shall be a full discharge of all the semi-annual payments hereinbefore provided for until said semi-annual payments shall equal in amount the payments so made in advance, with interest thereon, and for the purpose of determining and ascertaining the interest on said advanced payments, each semi-annual payment hereinbefore provided for shall be taken as a payment on the day it becomes payable, of the sum of fifteen thousand dollars, towards the advance payments, and shall be appropriated, first to discharge the interest on the advance payments, and the balance, if any, to discharge the principal of the advance payments.

" The Newport and Fall River Railroad Company further agrees to keep up its corporate organization, an official board of directors, at its own separate cost and expense, during the continuance of this agreement, and to pass and perform all such official acts as may from time to time become [necessary] for its legal and proper management."

to do this, because it would impair the obligation of the con-
tract between the parties. In this respect, a corporation stands
on no different ground. *Simpson* v. *Denison*, 10 Hare, 51. The
shares are personal property, and the rights of the shareholder, so
far as this case is concerned, do not differ from the rights of a
partner. This is a private corporation ; as much so as banking
corporations which issue currency, or as turnpike or canal cor-
porations. *Dartmouth College* v. *Woodward*, 4 Wheat. 518.
*State Bank of Ohio* v. *Knoop*, 16 How. (U. S.) 380, 381. Angell
& Ames on Corp. § 31, *& seq.* and cases cited. Private corpo-
rations have no political privileges. And without legislative
sanction, it is plain that a majority of the members of the cor-
poration could not make this change against the will of the
minority. Angell & Ames on Corp. §§ 391–393, 537, and cases
cited. *Salem Milldam Corp.* v. *Ropes*, 6 Pick. 32. Before *St.*
1831, *c.* 81, which provided that all acts of incorporation there-
after passed should be liable to be amended, altered or repealed,
at the pleasure of the legislature, a majority could not do this
even with legislative sanction. *Boston and Lowell Railroad* v.
*Salem and Lowell Railroad*, 2 Gray, 1, and cases cited. Angell
& Ames on Corp. §§ 391, *& seq.* 537. *Crease* v. *Babcock*, 23
Pick. 334. *Dodge* v. *Woolsey*, 18 How. (U. S.) 331. *State
Bank of Ohio* v. *Knoop*, 16 How. (U. S.) 369. *Curran* v. *Ar-
kansas*, 15 How. (U. S.) 304. *Woodruff* v. *Trapnall*, 10 How.
(U. S.) 190. *Planters' Bank* v. *Sharp*, 6 How. (U S.) 301. *Gor-
don* v. *Appeal Tax Court*, 3 How. (U. S.) 133. *Allen* v. *McKeen*,
1 Sumner, 276. *McCray* v. *Junction Railroad*, 9 Indiana, 359.
*Stevens* v. *Rutland & Burlington Railroad*, 29 Verm. 548. This
rule has frequently been applied in actions on subscriptions.
But may a corporation apply money which has been paid in, to
purposes the prosecution of which would prevent them from col-
lecting unpaid assessments ? Before that statute was passed,
the state could no more authorize this change against the will
of the minority than against the will of the majority, or of the
whole body. The reason is, because the state could not pass
a statute impairing the obligation of contracts. Railroad
corporations are within this general rule. If English cases are

thought to establish a contrary doctrine, it is to be remembered that in England parliament is omnipotent, and may abrogate contracts between corporations and individuals, and between the nation and individuals. With us it is different. We have written constitutions, which control legislative action. *Fletcher* v. *Peck*, 6 Cranch, 87. The English cases hold that a court of chancery will restrain a corporation from using its funds to obtain from parliament an act changing its powers, if a single shareholder objects; but will not restrain it from making the application, in cases in which the public may be interested. And when a railroad company applies to parliament for an extension of its power, it is now the settled practice, upon the bill of a single stockholder, to enjoin the use of the corporate funds in the prosecution of this object, but to refuse to enjoin the application itself. *Bagshaw* v. *Eastern, &c. Railway*, 7 Hare, 114. The ground on which the use of the corporate funds is enjoined is, that it would be in violation of the contract between the corporation and the stockholder. See *Lancashire, &c. Railway* v. *Northwestern Railway*, 2 Kay & Johns. 293, 310, and cases cited. And there is no weight in the objection that this would give one stockholder undue power; because it is only in the execution of powers derived from their charter that the majority can control the single stockholder. When they undertake to transcend this, or to vary or change the contract, a single individual, clothed with the whole authority of the law, and with its whole enginery at his command, becomes supreme. Then may " one chase a thousand, and two put ten thousand to flight."

Undoubtedly the corporation is bound by the statute, by reason of its assent to it. This would have been the case even before the passage of *St.* 1830, *c.* 81. But that statute does not authorize the passage of an act like *St.* 1862, *c.* 149. The *St.* of 1830 was passed because it had become settled law that every act of incorporation was an irrevocable grant; and thus corporations enjoyed privileges not possessed by individuals. The public good frequently required legislation which would be inconsistent with the contracts of the state with corporations, in granting

their franchises. This statute, therefore, reserved the power of amendment or repeal to the legislature, for public purposes, in order that the state might change contracts between itself and corporations. But the corporation has made another contract with its stockholders, which it has no right to violate, either without or with the assistance of the legislature. The former contract, the state may change. It may impose new restrictions; order the corporation to sound whistles, erect gates, make bridges, station flagmen, change the grade of the road at crossings, &c. And it may do these things against the consent of a minority, or a majority, or the whole body of the stockholders. The right does not depend at all upon their assent. But this does not give the state the power to make a change which will impair contracts made by corporations with third persons; nor does it give to corporations the right to violate such contracts. See *Commonwealth* v. *Essex Co.* 13 Gray, 239; *Hamilton Ins. Co.* v. *Hobart*, 2 Gray, 547. The statute was not intended to touch such cases.

Inasmuch as the object of the statute was to authorize the legislature to make certain changes, as above described, against the will of corporations, the latter may be compelled to comply with the requirements of the legislature, whether they will or not. But it is plain that the legislature could not compel the Old Colony and Fall River Railroad Company to build this new line of road. They might have done so at the time the charter was granted, as a condition of the grant; but they cannot do so now, because it would impair the rights acquired by the corporation and its stockholders. The same reason exists why the minority should not be so compelled.

The *St.* of 1830 is a mere reservation of authority by the state, and not the creation of a power. It was not intended to give to majorities in corporations any larger control over the minority, or in any way to affect the relations existing between a corporation and its stockholders. It confers upon the state no authority over corporations and their stockholders, which it did not always possess over citizens. Otherwise, its effect would be, in the present case, to import new terms into

the contract; to devote the property of the stockholders to new purposes, aside from the contract; to make them partners in a new enterprise; to make the corporation liable for new debts; and to admit to the control and management of its affairs new members, against the plaintiff's will.

Before the passage of *St.* 1830, neither the legislature nor a corporation, nor both together, possessed the power of changing the purposes for which a corporation was created, against the will of a minority of the stockholders. How then could these two parties, neither of whom possessed this power, confer it upon one of them? Nor can it be maintained that this statute, construed in connection with any charter granted since its passage, constitutes a contract that the state may make any law which it pleases touching it. This is the ground of cases in New York. But the provisions of the constitution, which restrain the enactment of laws impairing the obligation of contracts, also enter as elements into the contract; and thus read, the statute means that the state may make any law which is constitutional. It only gave to the legislature authority to make such changes as would simply enlarge or diminish the privileges or restrictions set out in the charter and the statutes; but it gave no power to change the purposes for which a company was incorporated, against the assent of any of its members.

The borrowing of money and issuing of bonds by the defendant corporation were unauthorized. *St.* 1861, *c.* 156, § 2. Gen. Sts. *c.* 63, § 120. The contract with the Newport and Fall River Railroad Company was also illegal. It was a mere evasion of the statute, to enter into such a contract with a moonshine corporation, and call it a lease.

*S. Bartlett & J. G. Abbott,* (*B. Dean* with them,) for the defendants. The main question in the present case is, whether the legislature can constitutionally authorize a railroad corporation to extend its railroad, or unite with another corporation owning a road connecting with it and forming an extension of the same general route, against the objection of any single stockholder

These corporations are *quasi* public, and are created solely on the ground of the public good ; and a different rule has always prevailed in reference to them, as to the right of the legislature to vary the original charter, with the consent of the corporation, from that which has been applied to merely private corporations. Redfield on Railways, 13, 92, 421, 496, 621, and cases cited. Such changes might always be made, if within the purpose of .the charter, and assented to by the corporation. And no contract with stockholders is thereby infringed. Each stockholder knows or is bound to know that, within the line of the general objects and purposes of the charter, he is in the power of a . majority of his associates and the legislature. This is the fair construction of his contract.

The legislature make no contract with the stockholder, but only with the corporation; and a part of the contract with the corporation is, that they shall act by a majority vote, unless otherwise provided. No contract therefore is violated or impaired when the legislature make a change in a charter, and the corporation accept it by a majority vote, because the contract of the stockholder is that the legislature may make such change, if such majority assent to it. The class of cases that are supposed to sustain a contrary doctrine make the mistake of con founding the corporation with the stockholder.

But if there was ever any doubt of the existence of this power in the legislature, there has been none since *St.* 1830, reserving the right to the legislature to amend, alter or repeal all charters thereafter granted, at pleasure. This power has been frequently exercised in this state ; and has been sanctioned by the judicial decisions, wherever the right to alter charters is reserved to the legislature. *Pacific Railroad* v. *Renshaw,* 18 Missouri, 210. *Sprague* v. *Illinois River Railroad,* 19 Illinois, 174. *Peoria, &c. Railroad* v. *Elting,* 17 Illinois, 429, and cases cited. *Oldtown, &c. Railroad* v. *Veazie,* 39 Maine, 580, and cases cited. *Northern Railroad* v. *Miller,* 10 Barb. 282. *White* v. *Syracuse, &c. Railroad,* 14 Barb. 559. *Buffalo, &c. Railroad* v. *Dudley,* 4 Kernan, 336. *Crease* v. *Babcock,* 23 Pick. 342. *McLaren* v *Pennington,* 1 Paige, 107. Of course, there are limits to this

authority; but these limits are not in the direction of changes to carry out or extend the general purposes for which the corporation was created. The limit will be found when any attempt is made to abrogate any contract made by the corporation under their charter, or deprive them of any vested property or rights of property legally acquired. *Commonwealth* v. *Essex Co.* 13 Gray, 253.

The experience of the community has established the right of the legislature to unite two railroad corporations, on the same general route. Whatever conclusion might be arrived at if it were a new question, it will be no more denied now than the rights of mill-owners to flow lands. Such a union has been sanctioned by this court. *Boston & Providence Railroad* v. *Midland Railroad*, 1 Gray, 358. The plaintiff holds his stock by virtue of a union precisely similar to that now complained of.

The contract with the Newport and Fall River Railroad Company was authorized under Gen. Sts. *c.* 63, § 115. The only difference between the contract in this case and those usually made is that here the payment is made in advance.

*J. H. Clifford*, in reply.

BIGELOW, C. J. We do not deem it necessary to consider the questions raised by the demurrer to the bill, nor to discuss the nature or extent of the jurisdiction of this court in equity over corporations, at the suit of one or more of their stockholders, in cases where there has been an excess or abuse of the power or authority conferred by legislative grants. In the view which we have taken of the merits of the case, these questions become immaterial.

The case for the plaintiff mainly rests on the single proposition of law, that a corporation established by the legislature of this commonwealth, by acts which, under *St.* 1830, *c.* 81, are subject to alteration, amendment or repeal, at the pleasure of the legislature, cannot engage in any new enterprise or enter upon any new undertaking, in addition to that contemplated by and embraced in the original charter of the company, against the consent of any one of its stockholders, although such new enterprise or undertaking is of the same kind with that for

which the corporation was originally established, and is authorized, sanctioned and adopted by an express legislative grant, and by a vote of the majority of the stockholders duly ascertained according to law.

In endeavoring to ascertain whether this proposition can be supported on sound legal principles, it does not seem to us to be necessary to enter upon any extended discussion of the extent of the right reserved by the general laws to the legislature to modify or repeal the charters of corporations without or against their consent. No question arises here between the legislature and the corporation. The latter have assented, in the mode provided by law, to the change in their rights, powers and duties which have been created by the act set forth in the bill, and have thereby accepted the modifications of their original contract with the Commonwealth, which result from the new provisions of law which they have thus adopted and sanctioned. Nor are we called on to determine the effect which such a legislative act would have upon a previously existing executory contract entered into with the corporation; as, for instance, an agreement to subscribe for stock and to become a member of a corporate body, created or to be established for certain distinct and designated objects. No such question arises in the present case. The plaintiff had no executory agreement with the defendants at the time the act in question was passed by the legislature, or when it was approved and accepted by a legal vote of the corporation. He was then the absolute owner of shares, and as such was a constituent member of the body corporate, clothed with all the rights and privileges and subject to all the duties and obligations of a stockholder. These, therefore, constituted the extent and the measure of his responsibility to the corporation, and of their liability and legal obligations to him. In this view, the gist of the present inquiry seems to us to embrace a much narrower range than that which was taken in the very elaborate and extended argument submitted by the learned counsel for the plaintiff. It appears to us that when we shall have ascertained and defined with precision and accuracy the nature of the contract which subsists, under

the statutes of this commonwealth, between a corporation and one of its members, solely by virtue of his being a proprietor of shares in the capital stock, we shall have gone very far towards a final adjudication of the rights of the respective parties, so far as they are involved in the present controversy.

We suppose it may be stated as an indisputable proposition, that every person who becomes a member of a corporation aggregate by purchasing and holding shares agrees by necessary implication that he will be bound by all acts and proceedings, within the scope of the powers and authority conferred by the charter, which shall be adopted or sanctioned by a vote of the majority of the corporation, duly taken and ascertained according to law. This is the unavoidable result of the fundamental principle that the majority of the stockholders can regulate and control the lawful exercise of the powers conferred on a corporation by its charter. A holder of shares in an incorporated body, so far as his individual rights and interests may be involved in the doings of the corporation, acting within the legitimate sphere of its corporate power, has no other legal control over them than that which he can exercise by his single vote in the meetings of the company. To this extent, he has parted with his personal right or privilege to regulate the disposition of that portion of his property which he has invested in the capital stock of the corporation, and surrendered it to the will of a majority of his fellow corporators. The *jus disponendi* is vested in them so long as they keep within the line of the general purpose and object for which the corporation was established, although their action may be against the will of a minority, however large. It cannot, therefore, be justly said that the contract, express or implied, between the corporation and the stockholders is infringed or impaired by any act or proceeding of the former which is authorized by a majority, and which comes within the terms of the original statute creating and establishing their franchise, and conferring on them capacity to exercise control over the rights and property of their members. On the contrary, the fair and reasonable implication resulting from the legal relation of the stockholder and the corporation is,

that the majority may do any act either coming within the scope of the corporate authority, or which is consistent with the terms and conditions of the original charter, without and even against the consent of an individual member.

Such being the nature of the contract which subsists between the corporation and each of its members, we have only to inquire, in the present case, whether it has been in any respect violated by the present defendants. The answer to this inquiry will be found in the interpretation which is put on that clause of the general laws of this commonwealth already cited, by which a right is reserved to the legislature to amend, alter or repeal any act of incorporation which has been established by its authority since the enactment of that provision in *St.* 1830. Whatever may be the extent of the authority which is thereby retained by the legislature to modify or change the charters of corporations without or against their consent, there would seem to be no reason to doubt that, with the concurrence of the corporation manifested in the mode pointed out by law, the legislature may make any alteration in or addition to the power and authority conferred by the original act of incorporation, and not foreign to the purposes and objects for which it was enacted, and which it was designed to accomplish, which may seem to be expedient or necessary. No breach of contract would be thereby occasioned. Such action would be in precise accordance with the terms on which the grant of the franchise was made. In creating a corporation, no contract is made by the legislature with the individual members or stockholders, any further than they are represented by the artificial body which the act of incorporation calls into being. They have no other rights except those which exist or grow out of the constitution of the body corporate of which they are members. To this only can we look, in order to ascertain whether there has been any breach of contract or violation of chartered rights. It constitutes, of itself, the contract by which the rights of all parties are to be governed. When, therefore, it is expressly provided between the legislature on the one hand and the corporation on the other, as part of the original contract of incorporation, that the former

may change or modify or abrogate it or any portion of it, it cannot be said that any contract is broken or infringed when the power thus reserved is exercised with the consent of the artificial body of whose original creation and existence such reservation formed an essential part. The stockholder cannot say that he became a member of the corporation on the faith of an agreement made by the legislature with the corporation, that the original act of incorporation should undergo no change except with his assent. Such a position might be asserted with more plausibility, if there was an absence of a clause in the original act of incorporation providing for an alteration in its terms. In such a case it might perhaps be maintained that there was a strong implication that the charter should remain inviolate, and that the holders of shares invested their property in the corporation relying upon a contract entered into between it and the legislature that the provisions of the act creating it should remain unchanged. But it is difficult to see how such a construction can be put on a contract which contains an express stipulation that it shall be subject to amendment and alteration. If it be asked by whom such amendment or alteration is to be made, the answer is obvious : by the parties to the contract, the legislature on the one hand and the corporation on the other ; the former expressing its intention by means of a legislative act, and the latter assenting thereto by a vote of the majority of the stockholders, according to the provisions of its charter. It is nothing more than the ordinary case of a stipulation that one of the parties to a contract may vary its terms with the assent of the other contracting party. In such case, all persons claiming derivative rights or interests under the original contract, with notice of its terms, would be bound by the amendment or alteration to which the parties should agree. Take an illustration, similar to one put by the learned counsel for the defendants. Suppose a co-partnership or joint stock company, consisting of shipowners, to be formed for a specific purpose, to carry on, for instance, a series of voyages to India, with a proviso that at any time, by mutual assent of the parties, the terms of the original agreement might be modified or changed ; it being also stipulated

that owners of merchandise might share in the contemplated enterprise by sending goods to the ports or places to which the ships might be sent in pursuance of the agreement. Can there be any doubt that under such a contract the shipper of goods would be bound by any alteration in its terms to which the original parties should agree, and that if, in pursuance of such alteration, the destination of their vessels should be afterwards changed by the owners, so that voyages to China were substituted instead of to India, this change in the terms of the agreement would constitute no breach of contract towards the shippers of goods? If it be not so, then it would follow that a sub-contractor would not be bound by a stipulation in the principal contract under which he undertook to act, and of which he had due notice. It is a mistake, therefore, to say that the contract of a stockholder with a corporation established under our statutes binds the latter to undertake no new enterprise and engage in no business or operation other than that contemplated by the original charter. This interpretation puts aside the express provision authorizing an amendment or alteration of the act of incorporation, and gives it no effect as against a stockholder without his assent, although he bought his stock or subscribed for his shares subject to the legal effect of such a stipulation. The infirmity of the argument in behalf of the plaintiff is, that it admits that an amendment may be legal and valid as to the corporation, if they assent to it by a vote of the majority, while at the same time it sets it aside as against the stockholder who refuses to sanction it, on the ground that as to him it is illegal and void. But we cannot see how the amendment can be said to be legal and illegal *uno et eodem flatu.* If it is valid as to the corporation, for the reason that they have accepted and approved it according to the provisions of their charter, it would seem that it must also be binding on the stockholder, who has agreed that his rights and interests in the corporation shall be regulated and controlled by a vote of a majority, acting in conformity to the original constitution of the corporation, and within the scope of its corporate powers. The real contract into which the stockholder enters with the corporation

21 *

is, that he agrees to become a member of an artificial body which is created and has its existence by virtue of a contract with the legislature, which may be amended or changed with the consent of the company, ascertained and declared in the mode pointed out by law. Having, by virtue of the relation which subsists between himself and the corporation as a holder of shares, assented to the terms of the original act of incorporation, he cannot be heard to say that he will not be bound by a vote of the majority of the stockholders accepting an amendment or alterations of the charter made in pursuance of an express authority reserved to the legislature, and which by such acceptance has become binding on the corporation. Such we understand to be the result of the adjudicated cases. In *Crease* v. *Babcock*, 23 Pick. 342, it was expressly decided that corporators, by accepting a charter, directly agree to adopt the provision reserving to the legislature the right to amend, alter or repeal the act of incorporation as a constituent part of their contract; and it has often been decided, under similar provisions in the statutes of other states, that amendments or changes, either abridging the corporate authority or enlarging and extending it so as to embrace new enterprises and to incur additional burdens and liabilities, when duly adopted by the corporation, are valid and binding on a dissenting minority, as well as on those corporators by whose votes the amending act has been accepted and approved. *Buffalo, &c. Railroad* v. *Dudley*, 4 Kernan, 336, 348, 354. *Northern Railroad* v. *Miller*, 10 Barb. 282. *Meadow Dam Co.* v. *Gray*, 30 Maine, 547. *Oldtown, &c. Railroad* v. *Veazie*, 39 Maine, 580. *Banet* v. *Alton, &c. Railroad*, 13 Illinois, 504.

It was urged, as a grave objection against the doctrine above stated, that it puts the minority of the stockholders of a corporation entirely within the control of the legislature and a majority of the stockholders, and that there would be no limit or restraint placed on the exercise of the power, so that corporations might be diverted to purposes and objects wholly foreign to those for which they were originally established, and stockholders might be made to participate against their will in undertakings which

they never contemplated and which they deemed inexpedient or ruinous. If this be so, it is a consequence of which no stockholder can reasonably complain, because it is a result which flows from the contract into which he has voluntarily entered. But we are not prepared to admit the soundness of the objection. A restraint or limit on the power of the legislature to alter or amend a charter, even with the consent of the corporation, may perhaps be found in the doctrine recognized in some of the English cases, that the enlargement of corporate powers shall not be extended so as to authorize enterprises or operations different in their nature and kind from those comprehended within the terms of the original charter, but shall be confined to purposes and objects *ejusdem generis* with those for which the corporation was primarily granted. See *Ware* v. *Grand Junction Water Works*, 2 Russ. & Mylne, 470 ; *Ffooks* v. *Southwestern Railway*, 1 Sm. & Gif. 142. But however this may be, no such question arises in the present case, inasmuch as the additional acts, the validity of which is called into controversy by the plaintiff, do not empower the defendants to engage in any undertaking essentially different in kind from that which was embraced in the original acts by which their corporate existence under their present name was authorized and established.

So far as any argument against the right of the legislature to amend or alter the charters of corporations under our statutes is drawn from the peril to which it exposes the property and interests of dissenting minorities of stockholders, we cannot deem it of any practical weight or importance. The good faith of the legislature and the self-interest of the majority will ordinarily be a sufficient protection against any wanton or oppressive use of their power. Against any dishonest or fraudulent abuses of it, a sufficient remedy can always be had in the courts of justice.

It may be well to add, in order to avoid misapprehension, that we do not intend to say that the legislature have any power to change or modify an act of incorporation in such a way as to affect in a material particular a contract which they have entered into with a third person. Such an exercise of legislative

power would be unconstitutional and invalid, because it would impair the obligation of a contract. It was so decided by this court in *Hamilton Ins. Co.* v. *Hobart*, 2 Gray, 547, where it was held that an act of the legislature was void which made a new party to an executory contract of insurance without the assent of the assured. All that we mean to determine is, that the obligation of the contract which subsists between the corporation and a stockholder, by virtue of his being a proprietor of shares in the corporate stock, is not impaired by an act of the legislature which amends and alters the charter and authorizes the corporation to undertake new and additional enterprises of a nature similar to those embraced within the original grant of power, if such act is accepted by a majority of the stockholders in the mode provided by law.

The only other ground on which the plaintiff seeks to maintain his bill is, that the indenture entered into by the defendants with the Newport and Fall River Railroad Company, for the lease of the road belonging to the latter company to the defendants, is a violation of the second section of the act of 1861, authorizing the extension of the defendants' road, which prohibits them from using any part of their reserved funds to build said extension or any portion of the road in Rhode Island. But on looking at the terms of the instrument it appears to us to be a lease in regular form for a term of ten years of the road in Rhode Island to the defendants, in consideration of a stipulated rent *per annum*, payable in advance, and of an agreement by the defendants to perform all the transportation of persons and freight upon and over the road in Rhode Island. Such a contract seems to us to be fully authorized by Gen. Sts. *c*. 63, § 115; and there being no allegation or proof that it was made collusively, for the purpose of evading the prohibition of the expenditure of the surplus or reserved funds belonging to the defendants, or that such will be the effect of carrying out the stipulations in the indenture, we are of opinion that the plaintiff fails to support this part of his case.      *Bill dismissed.*