## No. 13,040.

STATE EX REL. JAMES JACKSON ET AL. VS. ISIDORE NEWMAN, SR., ET ALS.

### SYLLABUS.

1. The N. O. Gas Light Co. can exercise only such powers as were conferred by legislative grant upon the Crescent City Gas Light Company, of which it is the successor, either by express terms, or by necessary implication.
2. Implied powers in corporations are presumed to exist only to the extent

that may be necessary to enable such bodies to carry out the express powers granted, and to accomplish the purpose of their creation.

3. An incidental power may be defined to be one that is directly and immediately appropriate to the execution of the specific power granted, and not one that has merely some slight or remote relation to it.

4. While, under some circumstances, one corporation may not unlawfully acquire holdings of stock in another corporation, such holdings do not partake of the fullness of perfect ownership. They rather come under the head of what the Code (Art. 422) describes as "imperfect ownership."

5. Thus, when under circumstances tolerating it, a corporation, not possessing the express or necessarily implied power to do so, acquires stock in another corporation, it may collect dividends on, and sell or dispose of such stock, and yet not have the power to vote it at elections for officials to govern and manage the affairs of the other corporation.

6. For one corporation to take possession and manage the affairs of another corporation is, in effect, equivalent to engaging in a business other than that authorized by its charter, and this is in contravention of the public policy of the State as established in its fundamental law, and void.

 PPEAL from the Civil District Court for the Parish of Orleans. —*Monroe, J.*

*Buck, Walshe & Buck, Frank N. Butler,* and *Frank N. Butler, Jr.,* for Plaintiffs and Appellants.

*E. Howard McCaleb, Fenner, Henderson & Fenner* for Defendants, Appellees.

Argued and submitted January 24, 1899.
Opinion handed down March 20, 1899.

The opinion of the court was delivered by

BLANCHARD, J. An election for directors of the Jefferson City Gaslight Co. was held November 7, 1898.

The Board of Directors of that corporation is composed of five persons, elected annually by the stockholders.

The election is by ballot and is conducted or presided over by three inspectors or commissioners of election chosen for the purpose.

There were two tickets in the field for directors, one headed by James Jackson, the other by Isidore Newman, Sr.

The Newman ticket was returned elected by the inspectors.

Whereupon James Jackson and those running on the ticket with him instituted this proceeding by *quo warranto* to inquire into said

election and to contest the authority by which Newman and his associates, returned elected, claim the office of directors aforesaid.

Jefferson City was once an independent municipality. Later it became merged into the city of New Orleans and now forms part of the latter city.

When it was an independent municipality, the Jefferson City Gas Light Company was organized, first by notarial charter, afterwards by legislative enactment confirming the grants made to the company by the mayor and council of Jefferson City.

The time of the expiration of this charter is a subject of contention —relators claiming it expires March 9, 1899; respondents that it expires April 15, 1900.

But this is not a direct issue in the present controversy, and it is, therefore, not necessary to pass upon it.

The New Orleans Gas Light Co. and another corporation known as the Crescent City Gas Light Co. were organized under legislative charters.

The former was granted the exclusive privilege of making and vending gas in the city of New Orleans from the date of its incorporation in 1833, until April 1, 1875, and the latter was granted the same privilege for fifty years from the date of expiration of the charter of the first named company.

In 1870, when the legislative charter of the Crescent City Gas Light Co. was granted, the City of Jefferson had not yet become a part of the municipality of New Orleans.

When, later, it and other suburban towns were merged into the city of New Orleans an act was passed by the General Assembly of the State, amending the charter of the Crescent City Company, by which it was declared that the "City of New Orleans," as used in the original charter, should be deemed "to include all parts of the present City of New Orleans, and any additions which may at any time be made thereto," but that it was not the intention of the act to conflict with the existing charter of the Jefferson City Gas Light Co. In other words, while the franchise privilege of the Crescent City Gas Light Co. was extended to cover that portion of the city of New Orleans formerly known as Jefferson City, such privilege was not to attach until the charter rights of the Jefferson City Gas Light Co. had expired, or some action was otherwise taken in respect thereto by the two corporations satisfactory to both, fulfilling the injunction of the law

to avoid a conflict with the rights claimed by the Jefferson City Gas Light Co. under its charter.

In 1875, just prior to the expiration of the charter of the old New Orleans Gas Light Co., that corporation and the Crescent City Gas Light Company, under authority of law, effected a consolidation by which the two companies, with all their rights, privileges, property, etc., became merged into one, thereafter to be known as the New Orleans Gas Light Co.

In 1882 this company purchased, and has since held, 1506 out of the 3000 shares representing the capital stock of the Jefferson City Gas Light Co. This was a majority of the stock of the latter company.

Of the 1506 shares so purchased, 1491 shares have been and are carried on the books of the Jefferson City Gas Light Co. in the name of the New Orleans Gas Light Co., ten shares in the name of A. H. Sieward, and five in the name of R. M. O'Brien.

Sieward and O'Brien have been for years past and are now president and vice-president, respectively, of the N. O. Gas Light Co.

It appears that the right of the N. O. Gas Light Co. to hold and to vote the stock of the Jefferson City Gas Light Co., purchased by it as aforesaid, has not heretofore been challenged.

Accordingly, this stock has been voted at recurring elections for directors in the Jefferson City Gas Light Co., and Sieward and O'Brien, with James Jackson, F. C. Lorenzin and W. A. Lorenzin, have been repeatedly chosen as the Board of Directors of said company, and were the incumbent board at the time the election took place over which the present controversy arose.

So that, as holders of the majority of stock in the Jefferson City Gas Light Co., the N. O. Gas Light Co. has exercised a controlling voice and influence in the affairs and in the management of the former company.

When, however, the election for directors in November last came on, certain of the minority stockholders filed with the officials named to conduct the election a protest against permitting the N. O. Gas Light Co. to vote the stock held by it, and demanded that the inspectors refuse and reject the vote when tendered.

The ground of the protest was that the N. O. Gas Light Co. is without legal right or standing to vote the stock held by it, or to exercise any act of ownership in respect thereof.

Sieward, president of the N. O. Gas Light Co., appeared and tend-

ered the vote of the 1491 shares of stock held by his company. It was offered to be cast for relators herein. The inspectors, acting on the protest referred to, declined to receive it. Had this vote been recieved and counted it would have elected relators directors of the Jefferson City Gas Light Co. for the ensuing term. Without it, the result of the election, as tabulated and returned by the inspectors, showed the election of Newman and others, respondents herein.

The president of the N. O. Gas Light Co., duly protested against the action of the inspectors in declining to receive the vote he tendered.

If the N. O. Gas Light Co. had the legal right to vote its stock, then must the vote tendered by its president be considered as cast, and relators held entitled to be recognized as the Board of Directors of the Jefferson City Gas Light Co.

If it did not have the legal right to vote its said stock, then must this proceeding by *quo warranto* fall, with the resultant effect, impliedly, of recognizing respondents as the true and lawful Board of Directors of the Jefferson City Co.

Whatever authority the present N. O. Gas Light Co. possesses, in respect of its rights to acquire and hold personal and real property, is derived from the charter granted by the State to the Crescent City Gas Light Co., of which, as we have seen, it is the assignee and successor.

It may exercise only such powers as were conferred by the legislative grant upon the Crescent City Gas Light Co., either in express terms, or by necessary implication. Implied powers in corporations are presumed to exist only to the extent that may be necessary to enable such bodies to carry out the express powers granted, and to accomplish the purpose of their creation. And an incidental power may be defined to be one that is directly and immediately appropriate to the execution of the specific power granted, and not one that has merely some slight or remote relation to it. The People *ex rel* Peabody vs. Chicago Gas Trust Co., 130 Ill., 268.

But in the view we take of the case, it is not necessary to pass directly on the question whether or not the N. O. Gas Light Co. could legally acquire, and may lawfully hold, stock in the Jefferson City Gas Light Co.

Conceding that under some circumstances one corporation may not unlawfully acquire holdings of stock in another corporation, such

holdings, we think, do not partake of the fullness of perfect ownership as defined by the Civil Code (Art. 491) giving "the right to use, to enjoy and to dispose of * * * in the most unlimited manner."

They rather come under the head of what the Code (Art. 492) describes as "imperfect ownership," which only gives the right of enjoying and disposing of property when it can be done without injuring the rights of others.

For instance, when under circumstances tolerating it, a corporation, not possessing the express or necessarily implied power to do so, acquires stock in another corporation, it may collect dividends on the same and may at will dispose of it, and yet not have the power to vote the stock at elections for officials to govern and manage the affairs of the other corporation.

This is sustained by both reason and authority and founded in the public policy of the State.

If a corporation, like the N. O. Gas Light Co., formed to manufacture and sell gas *within certain limits* of the city of New Orleans, is permitted to acquire a controlling interest in the stock of another gas company authorized to make and sell gas *in another part* of the city, and by such controlling interest to practically take possession and manage the affairs of such other corporation, it, in effect, is equivalent to engaging in a business other than that authorized in its charter, and this is in direct violation of the fundamental law. Constitution 1879, Art. 237; Constitution 1898, Art. 265.

The public policy of a State is manifested by its fundamental law, or by legislation enacted in pursuance thereof, and that it is the duty of the judiciary to refuse to sustain that which is against public policy is beyond cavil.

In Milbank vs. N. Y., Lake Erie & Western R. R. Co., 64 Howard Practice Reports, 20, it was held by the Supreme Court of New York that though a railroad corporation may take title to all kinds of personal property, including stock of other railroad corporations, to secure debts due it, the investment by a railroad company of its corporate funds in the purchase of the stock of another corporation is not necessary in the exercise of any of its corporate powers, is unauthorized, in violation of the statute, and, consequently, *ultra vires*. Further, that while a railroad corporation remains the owner of the stock of another corporation it may collect and receive dividends thereon,

and has the right to sell and dispose of the same, it has *no right to* vote *thereon.*

To the same effect is the ruling of the Supreme Court of Alabama in Memphis & Charleston R. R. Co. vs. Woods, 88 Ala. 631.

See also Central R. R. Co. vs. Collins, 40 Ga. 582; Hazelhurst vs. Savannah G. & N. R. R. Co., 43 Ga. 13; and 130 Ill. 268.

The conclusion reached is that the N. O. Gas Light Co. could not legally vote the shares of stock in the Jefferson City Gas Light Co., owned and held by it, either in its own name or in the names of other persons, at the election held for directors on the 7th day of November last, and not having such legal right it is without just cause of complaint that its vote was not received and counted. Had it been received and counted, and a different result as to the choice of directors had, the minority stockholders, protesting against its vote, would have had a legal cause of action in the courts to contest the same, and avoid the election thereby brought about. And so the final result would be the same.

We have given consideration to the contention of relators that because the N. O. Gas Light Co. has been permitted to vote the stock held by it in past years, the other stockholders of the Jefferson City Gas Light Co. are estopped from now denying its right to vote. But we cannot give our assent to this doctrine as thus broadly insisted on.

It is public policy crystalized into law which denies it the right to vote, and what is against the law cannot, in such a case as this, be legalized by acquiescence. Estoppels are not favored. Besides, there may have been no particular reason in the past for the minority stockholders to object to the vote, whereas at the recent election, when the expiration of the charter of the Jefferson City Gas Light Co. drew near and a liquidation of its affairs, perhaps, necessary, there may have been the best of reasons for objecting to the N. O. Gas Light Co. electing a Board of Directors of its own choosing, especially so in view of the fact that it claims the right of succession to make and vend gas in that part of the city, and was likely to become a bidder for the property and effects of the outgoing company.

That conflicts of interest, in view of this, between the companies, are likely to arise, is not difficult to foresee, and to contend that a Board of Directors chosen by the succeeding company, especially that part of the board invested with important holdings and powers of administration in the superceding corporation, will be altogether im-

partial and unbiased in respect to the matters and things over which the clash of interest arises, or may arise, is to expect a little too much of average human nature.

So, the law wisely removes the temptation.

Because, after the expiration of the charter of the Jefferson City Gas Light Co., the N. O. Gas Light Co. claims the right, under the act of the Legislature, to make and vend gas in that part of the city of New Orleans, that fact cannot be held to vest the latter company with authority not theretofore possessed with regard to acquiring and voting the stock of the former corporation and thus controlling its affairs.

Nor do we think that the question of the right of these two gas companies to consolidate, and, as incidental to that right, the question of the authority of the one to acquire the stock of the other with which it is proposed to consolidate, arise in this case. There is no pretense that any such purpose was in view.

The judgment of the court below was in favor of respondents and the same is affirmed.

Mr. Justice Breaux concurs in the decree.