STEELE v. UNITED FRUIT CO. et al.

(Circuit Court, E. D. Louisiana. June 12, 1911.)

No. 13,762.

1. MONOPOLIES (§ 24*)—ACQUISITION OF CONTROL OF COMPETING CORPORATIONS—FOREIGN COMMERCE.

Evidence *held* to warrant findings that defendant fruit company, engaged in foreign commerce, acquired a controlling interest in a competing steamship corporation to control its operation, prevent competition and the increase of its business by the addition of new capital, and that a subsequent sale of such stock to individuals was formal only, and not intended in good faith to divest the fruit company of its control, authorizing an injunction restraining it or the purchasers from voting the stock in the fruit company's interest.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 17; Dec. Dig. § 24.*]

2. MONOPOLIES (§ 21*)—PURCHASE OF STOCK—VALIDITY.

Purchase by one corporation engaged in foreign commerce of a controlling interest in the stock of a competing company similarly engaged, for the purpose of eliminating competition, though invalid in so far as the right to vote the stock is concerned, does not invalidate the stock so as to preclude the purchasing company from transferring the same to another in good faith, and conferring the right to vote the stock so transferred on the purchaser in case the transfer is without suspicion of retained control, and the purchaser is not otherwise prohibited by law from voting the stock.

[Ed. Note.—For other cases, see Monopolies, Dec. Dig. § 21.*

Rights and liabilities of parties contracting with trusts or combinations in restraint of trade, see note to Chicago Wall Paper Mills v. General Paper Co., 78 C. C. A. 612.]

In Equity. Bill by Frederick M. Steele against the United Fruit Company and others. On exceptions to the report of the master. Overruled.

E. D. Owen, W. L. Hughes, and Rouse, Grant & Grant, for complainant.

Howe, Fenner, Spencer & Cocke, for United Fruit Company.

Dufour & Dufour, for Charles and Jacob Weinberger.

Farrar, Jonas, Goldsborough & Goldberg, for Bluefields Steamship Company.

FOSTER, District Judge. On December 3, 1909, Frederick M. Steele, a stockholder of the Bluefields Steamship Company, filed his bill against the United Fruit Company, against Andrew W. Preston, Minor C. Keith, and Bradley W. Palmer, its president, vice president, and secretary, respectively, against Crawford H. Ellis, its agent in New Orleans, against the president and other officers of the Bluefields Steamship Company, and against Charles and Jacob Weinberger. The bill is voluminous, and sets up generally that the United Fruit Company is an unlawful combination; that, having acquired the majority of the stock of the Bluefields Steamship Company, it had thereby controlled it for the purpose of suppressing competition with itself and to create a monopoly, in violation of the laws of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Louisiana and of the United States; that the United Fruit Company had no capacity to take title to, nor right to hold and vote, the stock of the Bluefields Company; that it had assigned all of its stock to Charles and Jacob Weinberger, one-half to each, and that the assignment was fraudulent and a sham and was only to enable the Weinbergers to vote the stock in the interest of the United Fruit Company and according to its instructions, for the purpose of continuing its control of the Bluefields Steamship Company. The bill also sets out a number of specific acts, violative of the neutrality laws of the United States, alleging the same to be intentionally and fraudulently done on the part of the officers of the Bluefields Company at the instance of the United Fruit Company, for the purpose of causing the Bluefields Company to lose a valuable concession in Nicaragua, to wit, the right to exclusive navigation of the Escondido river. The bill also charges fraudulent mismanagement generally against the officers of the Bluefields Company, at the instance of and for the benefit of the United Fruit Company, and prays that the United Fruit Company and Charles and Jacob Weinberger be enjoined from claiming any right, title, or interest in the said stock, from interfering in any way with the business of the Bluefields Steamship Company, and from voting the stock at any meeting, and that a receiver be appointed pending the litigation. On this application, in view of the extraordinary allegations of the bill, and of the war then raging in Nicaragua, a receiver was appointed for what legal effect the appointment might have, but he was ordered not to take physical possession. On December 8, 1909, an amended bill was filed, which amplified the allegations of the original bill. On January 17, 1910, Simon, Emanuel, and Adolph Steinhardt, also stockholders of the Bluefields Steamship Company, filed a cross-bill, praying for substantially the same relief as Steele, and on the same date Adolph 'Segal filed an intervention, joining the complainant, Steele, and praying for the same relief. In due course the defendants filed answer, denying the allegations of the bill and other pleadings and affirming the good faith of the sale and transfer of the United Fruit Company's stock to the Weinbergers. After a hearing, the appointment of the receiver was maintained, and he was directed to take charge of all the assets of the Bluefields Steamship Company, and the preliminary injunction issued as prayed for. The case was then referred to a master to take the evidence and report his findings of fact and conclusions of law thereon, and is now before me on final hearing on exceptions to his report.

The proceedings before the master took a wide range, but in his able and painstaking report he has endeavored to deal specifically with all of the contentions of the parties and to find the facts with particularity, those collateral as well as those material to the main issues. The master reduced his conclusions to some 51 special findings of fact. To these facts the defendants have filed 37 exceptions, divided into many subheads, and the complainants have filed some 17 exceptions. The exceptions to the master's report are largely to his findings of collateral facts, and principally to his deductions therefrom. Some are directed only at his choice of language, and others com-

plain that he did not find the facts regarding incidental transactions more in detail. Had counsel followed the better practice of filing their exceptions before the master, doubtless he would have corrected his report to conform more nearly to their views. Most of the exceptions are unimportant and need not be further noticed. Those I consider material will be referred to later.

It is undisputed, however, that the Bluefields Steamship Company was organized December 28, 1897, as a Louisiana corporation, with an authorized capital stock of $100,000, all of which was issued before January 1, 1899; that the company was engaged in the banana importing business from Bluefields, Nicaragua, to the United States; that the United Fruit Company was incorporated March 30, 1899, under the laws of New Jersey, and in June, 1899, entered into competition with the Bluefields Steamship Company, operating one ship a week from Bluefields; that on September 20, 1899, the United Fruit Company consolidated with six other New Jersey corporations, all engaged in the fruit business, and Messrs. Andrew W. Preston, Minor C. Keith, and Bradley W. Palmer became, respectively, its president, vice president, and secretary, as well as directors; that in October, 1899, after the said consolidation, the United Fruit Company acquired, in the name of its president, one-half of the outstanding stock of the Bluefields Steamship Company—500 shares—and at the same time there was assigned to him an additional share for voting purposes; that the said competition ceased, and three employés of the United Fruit Company were elected directors of the Bluefields Company, the board consisting of six members, and so maintained continuously until 1907, during all of which time the United Fruit Company or its officers controlled the election of all the directors of the Bluefields Company by a clear majority vote of all the capital stock in existence; that on August 31, 1907, the United Fruit Company disposed of 4 shares of its stock, and its three employés resigned from the board of the Bluefields Steamship Company, but the United Fruit Company continued to vote its stock, and all elections for officers of the Bluefields Company were unanimous; that in 1909, before this suit was filed, the United Fruit Company purchased 70 additional shares of the stock of the Bluefields Steamship Company, which gave it 53 per cent. of all the stock of the company issued.

[1] From these facts the conclusion is irresistible that the object of the United Fruit Company in first acquiring the stock was to control the competition of the Bluefields Steamship Company, and, no matter what may have been its intention during the period between 1907 and 1909, with the acquisition of the additional stock in September, 1909, the power of absolute control returned, and it is plain that the injunction should be perpetuated against the United Fruit Company, if it has now any interest in the Bluefields Company's stock. Factors' & Traders' Ins. Company v. New Harbor Protection Patrol, 37 La. Ann. 233; State ex rel. Jackson v. Newman, 51 La. Ann. 838, 25 South. 408, 72 Am. St. Rep. 476; Northern Securities Company v. United States, 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679. It appears, however, that the United Fruit Company, on September 15,

1909, transferred all of its Bluefields Company holdings to Charles and Jacob Weinberger by a written contract, which was amended on December 31, 1909, while the litigation was pending.

The undisputed facts relevant to this transfer are as follows: Charles and Jacob Weinberger became stockholders in the Bluefields Steamship Company at its formation and owned, together with a third brother, one-third of its capital stock. They were active in securing control of the corporation for the United Fruit Company, and sold it one-half of their stock in October, 1899. Charles Weinberger was put in sole charge of the New Orleans division of the Fruit Dispatch Company, a subsidiary corporation of the United Fruit Company controlled by it, in June, 1902, and is still so employed. Jacob Weinberger had no active connection with the fruit business in Nicaragua from June, 1905, to September, 1909, and he was then engaged, over the protest of some of the minority stockholders, to go to Nicaragua merely to look into the affairs of the Bluefields Company and make a report, at a salary of $416.67 per month. In the early part of 1909 the United Fruit Company was advised by its counsel that it probably could not vote any of the Bluefields stock standing in its name and in the name of its officers. Jacob Weinberger learned of this advice, and tried to buy all of its Bluefields stock, but was unsuccessful. As early as December, 1906, Charles and Jacob Weinberger were unable to pay their debts, and in August, 1909, while still apparently insolvent, all of their Bluefields stock, which was then pledged to the State National Bank, with the exception of 38 shares, was sold by the liquidators of the bank to Steele with the knowledge of Charles Weinberger and without objection on his part. At about the same time Steele began buying Bluefields stock in August, 1909, the local manager and local attorney of the United Fruit Company suggested to the Weinbergers that they might make arrangements for buying the United Fruit Company's stock, and by the agreement of September 15th the United Fruit Company transferred to the Weinbergers 686 shares of Bluefields stock for the price of $450 a share, and further agreed to deliver and sell to them 70 additional shares at the same price. The United Fruit Company was compelled to buy the 70 additional shares for cash, and paid more for them than it sold them for. The stock transferred constituted 53 per cent. of all of the stock of the Bluefields Steamship Company. The sale was made on terms of 10 years' credit, payable in equal annual installments, no cash was paid at all, and the United Fruit Company retained the right to rescind the sale at any time. The Weinbergers on their part agreed that the voting power of the stock should be used to elect a director nominated by the United Fruit Company and to amend the charter so that the directors and other officers would hold office at the will of the stockholders, and that all of their acts should require the ratification of a majority of the stockholders; that no extraordinary or unusual indebtedness should be incurred except with the consent of this director, the president, or vice president of the United Fruit Company; that the capital stock should not be increased or diminished except by consent in writing of the president, or the vice president,

or the executive committee of the United Fruit Company. During the pendency of this suit, the parties amended this agreement with the view to eliminate all clauses supposed to be objectionable to the court, but the sale still remains as one entirely on ten years' credit, with a provision for foreclosure and sale of the stock without judicial proceedings on default of any payment of principal or interest, or in the event of the purchasers' bankruptcy.

With regard to this transfer, the master found, as evidenced by his twenty-first, fortieth, and forty-first findings of fact, that the sale to the Weinbergers was coupled with the retained control of the voting power of the stock in the United Fruit Company, and that its purpose was to vest the control of the Bluefields Steamship Company in a stockholder under obligations to the United Fruit Company, one that could be relied upon to carry out its wishes, and that it did not divest the United Fruit Company of the control of its 756 shares referred to, and was not intended by the parties to do so. The defendants have excepted to the master's said findings of fact on the ground that the uncontradicted and unimpeached testimony of all the parties to the transaction shows that it was a real transfer, and was intended by all of the parties to divest the United Fruit Company both of its ownership and control of the stock.

It is difficult, to my mind, to conceive how a more complete control could be retained or exercised than was contemplated by the original agreement. Conceding that it was the intention of the United Fruit Company to transfer to the Weinbergers the complete ownership of the stock at the expiration of the credit period, it is manifest that, without the consent of the United Fruit Company, there was no possibility of the Bluefields Steamship Company increasing or expanding its business, or attracting new capital, and all the time the power to control, or even entirely eliminate it, was in the hands of the United Fruit Company. And the amendment of December 31st does not materially change the situation, for unless the Weinbergers paid some $51,000 in principal and interest at the end of the first year the United Fruit Company could foreclose. In the preceding ten years the Bluefields Company's profits had averaged about $60,000 a year, and on the same basis the Weinbergers' share would not be over $32,000. They were insolvent, and in the ordinary course of events they could not have met this payment. In view of all the circumstances peculiar to this transaction and the relationship of the parties, the physical and other facts may well outweigh the testimony of the parties, conceding to them the utmost good faith, for the agreement, if allowed to stand, would have to be interpreted by them, and the deep obligation of the purchasers to the United Fruit Company would necessarily lead them to conform to its wishes. It is certain that the United Fruit Company could not vote the stock held in its name, and two courses were open to it: One, to retain it quiescent, and the other to divest itself entirely of its ownership and control. If it intended to do the latter, it was not its concern who might control the Bluefields Company, and therefore the mere fact that, in order to deliver a clear majority, it bought stock for cash, which it subsequently sold for a smaller price on credit to two of its close

friends, who were at the time insolvent, indicates very plainly the real reason for making the transfer.

It is due to the defendants to say, however, that complainants failed to prove the allegations of the bill, charging intentional violations of the neutrality laws, and the master undoubtedly so intended to hold in his thirty-fifth finding. But I do not consider these allegations material to the issues now before me, nor did I so consider them at the time of confirming the receiver's appointment.

There appears to be evidence to sustain all·of the master's findings of fact, though I have not examined with particularity those matters not bearing directly on the main issues before me. The findings of a master are entitled to great weight, especially when he has seen and heard the witnesses, and I am not disposed to disturb the findings in this case.

[2] I am not called upon to say anything further at present, but for the information of the master and the parties I had perhaps. better express my opinion as to all the points raised. It has been urged with great earnestness and vigor by counsel for complainants that the contract by which the United Fruit Company acquired its stock was illegal, and it acquired nothing; that the stock standing in its name is void and it can transfer nothing, and that in any event, not having the right to vote the stock, it could not transfer the right to a purchaser. It may be that such a solution of the trust problem is desirable, but I cannot see my way clear to adopt complainants' contentions in the absence of a positive statute, especially in view of the expressions of the Supreme Court in the cases of Harriman v. Northern Securities Company, 197 U. S. 298, 25 Sup. Ct. 493, 49 L. Ed. 739, the Standard Oil Co. v. United States, 221 U. S. 1, 31 Sup. Ct. 502, 55 L. Ed. 619, and the United States v. American Tobacco Company, 221 U. S. 106, 31 Sup. Ct. 632, 55 L. Ed. 663, recently decided. The authorities cited by complainants would perhaps be persuasive if their first premise was correct, but the Supreme Court has clearly drawn the distinction, thin though it may be, between unlawful contracts and those incidental and collateral to them. The contract of sale by which the United Fruit Company acquired this stock was not of itself illegal and it undoubtedly acquired the ownership subject to the restrictions the law has placed upon its use. Continental Wall Paper. Company v. Voigt, 212 U. S. 258, 29 Sup. Ct. 280, 53 L. Ed. 486; Connolly v. Union Sewer Pipe Company, 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679.

I therefore must hold that the United Fruit Company has the right to. dispose of its stock, and the purchaser will be entitled to vote it, provided the transfer is entirely without suspicion of retained control, and he is not otherwise prohibited by law to do so.

The exceptions to the master's report will be overruled, and in accordance with his recommendations there will be a decree, dissolving the preliminary injunction herein, so as to permit the holding of an election of officers of the Bluefields Steamship Company, but maintaining it in all other respects, and ordering said election to be held before the master and under his control, the receiver to be maintained and jurisdiction to be retained by the court until further orders.