STURDEVANT BROTHERS & COMPANY V. FARMERS & MER-
CHANTS BANK OF RUSHVILLE.

FILED JULY 10, 1901.   No. 10,060.

Commissioner's opinion, Department No. 2.

1. **Cashier Can Not Obligate Bank on Undertaking, Where It Has No Interest.** A cashier of a bank has no authority, merely by virtue of his office, to obligate the bank upon an undertaking in replevin in a cause wherein the bank has no interest.

2. **Bank Can Not Pledge Credit as Accommodation in Judicial Proceeding.** It is not within the powers of an incorporated state bank to pledge its credit, as a mere matter of accommodation, by executing undertakings in judicial proceedings.

3. **Where an Obligation is so Clearly Ultra Vires that No One Can Be Misled, No Estoppel Arises.** Where an incorporated bank becomes surety in such an undertaking, no estoppel to assert want of power to incur the obligation arises solely upon the ground that other parties have been misled and acted in reliance thereon to their disadvantage, since the obligation was so clearly *ultra vires* that the parties must have known it and taken their chances of the corporation carrying it out.

4. **The Bank Will Only Be Estopped Where It Has Acquired and Retains Property by Means of the Contract.** In such cases, the corporation will be held estopped only where it has acquired money or property by means of the contract in excess of its powers, and, having retained the same or the proceeds thereof, sets up want of power against the party seeking to enforce it.

5. **In Replevin, Defendant Being Required to Object to an Insufficient Surety, Can Not Rely on Estoppel by the Delivery of Property to Plaintiff.** The statutes make it the duty of a defendant in replevin to except to insufficient sureties upon the undertaking; and hence, where want of power in the surety is palpable, he can not rely upon delivery of property to the plaintiff by the sheriff as estopping the surety to make such defense.

ERROR from the district court for Douglas county. Tried below before KEYSOR, J.   *Affirmed.*

*Michael F. Harrington, Will H. Thompson* and *James M. Kerr,* for plaintiffs in error.

*William V. Allen, Willis E. Reed* and *Harrison C. Brome, contra.*

Argued orally by *Will H. Thompson,* for plaintiffs; by *Willis E. Reed, contra.*

Pound, C.

This action was brought upon an undertaking in replevin, executed in the name of the defendant bank by its cashier. Trial was had to the court, without a jury, and the plaintiff prosecutes error from a judgment in favor of the defendant. The facts are substantially undisputed, and the only questions argued relate to their legal effect. At the time the undertaking in question was given, the defendant was a corporation organized under the state banking act. There were five stockholders: J. H. Armstrong, owning fifty-five shares; W. W. Wood, twenty shares; one Weeter, a non-resident, twenty shares; and W. D. Armstrong, the cashier, five shares. J. H. Armstrong was president and had the active management of the business. W. D. Armstrong was cashier, and these two, with Mr. Wood, who was vice-president, were directors. In November, 1890, one Ross, being about to bring an action of replevin against Sturdevant Bros., the plaintiffs herein, applied to Mr. Wood, who was a lawyer in Rushville, and had no part in the active management of the bank, to furnish a surety upon the required undertaking as an accommodation. Mr. Wood was not a proper surety under our statutes, and he referred Ross to W. D. Armstrong, at the same time cautioning the latter not to sign such a bond without the very best indemnity. W. D. Armstrong took an indemnity bond running to the bank and executed the required undertaking in the bank's name, signing it "Farmers & Merchants Bank of Rushville, by W. D. Armstrong, cashier." The sheriff accepted this undertaking and delivered the property in controversy to Ross. Trial was had about a month later, which resulted adversely

to Ross, and the property having been sold and disposed of by him after delivery under the writ, and the alternative judgment for its value remaining unsatisfied, suit was brought on the undertaking. The president and manager of the bank was absent at the time the undertaking was executed and did not even know that any person in the bank was upon the replevin undertaking till after trial and judgment in the replevin suit, nor did he know the exact status of the matter till about eight months after the bond was signed. Mr. Wood, as the evidence shows, had nothing to do with the conduct of the bank's business, but devoted his attention to the practice of law. Hence we do not think that his suggestion, made at his law office, that Ross apply to the cashier for a bond, is to be interpreted as an act in his capacity of director. He afterwards appeared in the cause as counsel, and the suggestion was evidently made as a lawyer, and not as a director of the corporation. What he may have said in his law office, while not engaged in the business of the bank, was not binding upon it. *Merchants Bank v. Rudolf,* 5 Nebr., 527. As the case stands, then, the bank must be held, if at all, by reason of the act of its cashier in executing the undertaking in its name. We feel clear that such an act was not within his authority, real or apparent, and we do not see how any one could have supposed that it was. The penalty of the bond and the amount for which judgment is sought are each within very little of the entire capital stock of the bank. Certainly the pledging of the bank's credit for so considerable an amount, as a mere accommodation, without benefit or advantage to the institution, was an act which ought to have received the serious consideration of the directors, if it could have been done at all. It is undisputed that the cashier had no actual authority so to do, and that the opinion of the directors was never taken. That it was not within his ordinary or ostensible authority is well settled. *Bank of Commerce v. Hart,* 37 Nebr., 197; *Rich v. State Nat. Bank,* 7 Nebr., 201; *Merchants Bank v. Rudolf,* 5 Nebr., 527; *Chase v. Swift*

& Co., 60 Nebr., 696; *Western Nat. Bank v. Armstrong*, 152 U. S., 346; *Farmers & Merchants Nat. Bank v. Smith*, 77 Fed. Rep., 129; *State Nat. Bank v. Newton Nat. Bank*, 66 Fed. Rep., 691; 4 Thompson, Corporations, secs. 4754, 4762. In *Farmers & Merchants Nat. Bank v. Smith* it was held that it was not within the powers of the bank to engage in the business of selling mortgage bonds on commission, and that no act of an officer in excess of the corporate powers could be said to be within the scope of his customary authority. In *Western Nat. Bank v. Armstrong* the court say, in speaking of a transaction out of the usual course of banking: "Such transactions would be so much out of the course of ordinary and legitimate banking as to require those making the loan to see to it that the officer or agent acting for the bank had special authority." Some attempt was made, indeed, to show that it was customary for banks in this state to execute bonds and undertakings in judicial proceedings. But the evidence shows merely that officers of banks as individuals were in the habit of accommodating each other and their customers, and falls far short of showing that the corporations themselves ever engaged in such practice. Even if the conversation of Ross and Wood out of the bank and the act of the cashier thereafter could be construed as an act of a majority of the directors, we do not think that the execution of a replevin undertaking in an amount nearly equaling the entire capital stock of the bank, as an accommodation, in a cause wherein the bank had no interest, was within the powers of the bank, so that, of itself, the act of a majority of the directors could bind it. *Western Nat. Bank v. Armstrong*, 152 U. S., 346; *Farmers & Merchants Nat. Bank v. Smith*, 77 Fed. Rep., 129; *Commercial Nat. Bank v. Pirie*, 82 Fed. Rep., 799; *Lucas v. White Line Transfer Co.*, 70 Ia., 541, 30 N. W. Rep., 771. Where so extravagant a liability is incurred without benefit to the bank and as a mere accommodation, the interests of depositors and stockholders have to be taken into account. It would be highly impolitic to permit the money of de-

positors placed in a bank on the faith of its capital, to be imperiled by sanctioning such transactions. ` If the act is of a nature which public policy or the very nature of the corporation prohibits it from doing, there could be no ratification: *Thompson v. West,* 59 Nebr., 677. Thus, in *Lucas v. White Line Transfer Co., supra,* the officers of a corporation engaged in the freight and transfer business signed its name to a bond as surety for a third person by way of guaranty of his credit. Afterwards the president of the company wrote a letter in its name agreeing to pay the amount called for by the bond. It was held that neither act created any liability.` But even if the act here in question be held not to be of this class but to belong rather with such unauthorized transactions as that involved in *State v. Bank of Hemingford,* 58 Nebr., 818, and to be capable of ratification, yet we do not think any ratification has been shown. Cases such as the one last cited, where the bank enters into a systematic course of unauthorized dealing in merchandise, keeping and retaining the merchandise or its proceeds, are very different from the one at bar. This case is to be compared rather to *Western Nat. Bank v. Armstrong,* 152 U. S., 346, where, as the court said, it did not appear "that the bank ever got a penny of the borrowed money or any benefit or advantage whatever by reason of the transaction." The pledge of the bank's credit in this case was on its face purely an accommodation. The bank could in no possible way be better off by reason of such gratuitous assumption of liability.

It is argued that the bank is estopped to assert want of authority by reason of silence on the part of its officers till after the trial of the replevin suit, and the retaining of an indemnity bond furnished by the plaintiff in replevin. But it appears that the chief managing officer of the bank and principal stockholder therein had no knowledge of the manner in which the bond had been executed till after the replevin case had been tried, and that he repudiated the act at once when he learned what had been

done, and caused the cashier to be removed. Silence while ignorant of the facts was no ratification (*Western Nat. Bank v. Armstrong,* 152 U. S., 346) ; if silence could in any event be treated as a ratification of such an act. *German Nat. Bank v. First Nat. Bank,* 55 Nebr., 86. Nor do we think that, had the facts been known, silence could be held to work an estoppel in a case of this kind, since the undertaking was so clearly outside of the bank's powers that no one had any cause to be misled thereby or to suppose that he was doing more than take his chances of performance. 5 Thompson, Corporations, sec. 6009; *Lucas v. White Line Transfer Co.,* 70 Ia., 541, 30 N. W. Rep., 771. The principle that a corporation, which has entered into a contract in excess of its powers and received the fruits or benefits thereof, will not be permitted to set up want of authority is not applicable to this controversy. The cases coming under that principle will be found to be those wherein the corporation has "acquired money or property by means of a contract in excess of its powers, and then, when the other party contracting seeks to enforce against the corporation the obligation which it has assumed therein, pleads that it had no power to enter into the contract, and at the same time keeps the money or the property." 5 Thompson, Corporations, sec. 6018. With respect to the indemnity bond taken by the cashier when he executed the replevin undertaking, it may be observed that the bank is not asserting, nor has it asserted, any rights under that bond. Nothing whatever has accrued to the bank's advantage by reason of it. Furthermore, no act of the directors adopting or accepting such indemnity is shown. In this respect *German Nat. Bank v. First Nat. Bank, supra,* is analogous.

It is said also that the bank is estopped to claim that the act was beyond its powers because the property replevied was taken away from the now plaintiffs by virtue of the undertaking. But the bank did not deprive the plaintiffs of any property. The sheriff was not bound to and should not have delivered the property upon such an undertaking.

The parties should not have acquiesced in his so doing by failure to except as required by law or to make objection at any time. The insufficiency of the surety on the undertaking was palpable, and the sheriff and the plaintiffs herein are fully as much to blame as the bank. Having themselves to blame for resting so long upon such doubtful security, plaintiffs may not invoke the rule as to incidence of liability where one of two innocent parties must suffer.

We recommend that the judgment be affirmed.

SEDGWICK and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the judgment of the district court is

AFFIRMED.