TRACY LOAN & TRUST CO. v. MERCHANTS' BANK et al.

No. 2923.   Decided August 8, 1917.   (167 Pac. 353.)

1. BANKS AND BANKING—STATE BANKS—POWERS—GUARANTY. Defendant bank's articles of incorporation provided that the bank was organized for the purpose of pursuing the banking business in all its branches, and should have power to deal in all commercial papers, etc., lease or purchase land and buildings proper for its use in conducting its business, and might acquire in the due course of business property of all kinds, etc. Const. art. 12, sec. 10 provides that "No corporation shall engage in any business other than that expressly authorized by its charter or articles of incorporation." Held, that a writing executed by the president of the bank guaranteeing the payment of rent by a drug company to plaintiff was ultra vires.[1]   (Page 200.)

2. BANKS AND BANKING—STATE BANKS—IMPLIED POWERS. When it has been determined that the acts attempted to be done are not within its charter or statutory powers, no implied powers can validate its acts.   (Page 202.)

3. BANKS AND BANKING—STATE BANKS—DELEGATION OF AUTHORITY. Since the bank itself could not execute the contract of guaranty, it could not delegate such authority to its president.   (Page 202.)

4. BANKS AND BANKING—ULTRA VIRES CONTRACT—ESTOPPEL. In an action on a guaranty executed by the president of defendant state bank, *held* under evidence that there had been no such conduct on the part of the bank or its officers as to estop the bank setting up that the guaranty was ultra vires.   (Page 203.)

5. BANKS AND BANKING—ULTRA VIRES CONTRACT—SECURITIES. Although the bank was not liable on the ultra vires contract of guaranty, it should be required to account for any securities which it holds to indemnify it against loss.   (Page 205.)

Appeal from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by the Tracy Loan & Trust Company against the Merchants' Bank and another.

---

[1] *Seeley* v. *Canal Co.,* 27 Utah, 179, 75 Pac. 367, and *Christensen* v. *Realty Co.,* 42 Utah, 86, 129 Pac. 412.

Judgment for plaintiff.  Defendant named appeals.

REVERSED with directions.

*Edwards & Wasson* and *Soule & Spaulding* for appellant.

*Stephens & Smith* and *Jas. Ingebretsen* for respondent.

GIDEON, J.

In this action plaintiff seeks to recover a judgment against the defendants, Merchants' Bank and H. P. Clark.  As a basis for the cause of action the complaint alleges the corporate existence of the plaintiff and the defendant Merchants' Bank, organized and doing business under the laws of the state of Utah, and that the Treasurer-Nelden-Ferron Drug Company, was, on the 23d day of September, 1910, a corporation existing under the laws of this state.  The complaint further alleges that the plaintiff was, at that date, and thereafter for a term of years, the owner under lease of certain premises located in Salt Lake City, commonly known as 172 South Main street; that the plaintiff acquired its interest in said premises and sublet the same to the said Treasurer-Nelden-Ferron Drug Company under a written lease dated the 23d day of September, 1910, wherein the premises were let to the said drug company from the 1st day of February, 1911, until the 1st day of February, 1916, for the sum of $36,000, payable monthly in installments of $600 each in advance; that on the 23d day of September, 1910, the defendants, Merchants' Bank and H. P. Clark, in consideration of the leasing of the premises by the plaintiff to the drug company, agreed to pay and guaranteed the payment of said rent and the whole thereof, and of the obligations assumed by the drug company.  It is further stated in the complaint that the drug company paid the stated rent on the premises for the months of February, March, April, May, and June, 1911, or a total of $3,000, and that it thereafter failed to make any payments of rent, as in said lease provided, and that the premises were sublet, but that the rental received did not equal the rental provided for in the lease executed to the drug company, and the complaint

asks judgment for the difference between the amount received from reletting the premises and the monthly rental as provided for in the lease. Both the lease and the alleged guaranty on the part of the defendants, Merchants' Bank and H. P. Clark, are attached to the complaint as exhibits and made parts of the same.

The defendant Clark filed an answer to the complaint, but as the action was afterwards dismissed as to him, no consideration will be given the issues made by his answer.

The defendant bank, in its answer, admits the corporate existence of both the plaintiff company and the bank; denies practically all of the other allegations of the complaint, and alleges, as a further defense, that the defendant bank is a corporation organized under the laws of Utah for the purpose of carrying on and conducting a banking business; and the objects of the corporation, as stated in its articles of incorporation, are set out in full in the answer. The bank in its answer also alleges, in addition to the original provisions of the articles, an amendment made to said articles on the 20th day of November, 1909, wherein said articles were amended to provide for a board of directors of fifteen members, and that said board should have general control and supervision of the property, business, and affairs of the corporation and prescribe by-laws, rules, and regulations for the conduct of its business; that on the 24th day of November of said year the directors adopted by-laws, and a copy of the same is attached to the answer and made a part thereof. The answer alleges as an affirmative defense that the execution of the written guaranty was, under the provisions of the articles of incorporation, ultra vires the bank, and that the signing and delivery of the instrument by Clark, as president of the bank or otherwise, in respect to said corporation, was ultra vires to bind the defendant bank. The answer further alleges that the defendant bank was in no way interested in the premises sought to be leased by the drug company, and received no consideration for the execution or delivery of the purported contract of guaranty, and the same never has been, was not, and is not, binding upon the bank and is void and of no force or effect as against the

bank; that the bank never recognized said instrument as a contract binding upon it, but, on the contrary, has at all times repudiated and disclaimed any liability under the same, and immediately upon receiving notice of the existence of the instrument and the delivery thereof the same was declared to be without authority on the part of said Clark, and his action was repudiated.

Plaintiff, in its reply, denies many of the allegations of the answer, pleads as a defense to the claims of the defendant bank that during the time Clark was president of the bank and on the 23d day of September, 1910, and thereafter till the year 1913, with the consent and acquiescence of the stockholders, directors, and all other officers of the bank, he was in absolute and direct control of its affairs and business and conducted and promoted and developed the same at his own discretion; that the officers of defendant bank permitted Clark to hold out to the public that said bank had the power to engage in such business and discharge such duties as he (Clark) might determine; that the officers of said bank allowed Clark unlimited scope and latitude in managing and directing the affairs of defendant bank and in transacting any and all business of every name and nature for said bank, regardless of any limitation imposed upon it, or upon the authority of Clark by its written articles of incorporation or by-laws; that by reason of said confidence and authority intrusted to him, the said Clark disregarded any express or implied limitations upon the authorized business and pursuit of said bank as expressed in its articles of incorporation and by-laws and conducted the business of the same by such methods, practices, ways, means, and policies as suited his, Clark's, convenience; that the defendant bank did not, at any time, or in any manner, repudiate or question the validity of such written guaranty until the same became fully executed, and not until after the insolvency of the drug company and until it had become impossible to collect the rent or any part thereof from the said drug company; that the plaintiff entered into the contract with the drug company relying upon the guaranty of the bank to pay the rental for the full term of said lease

in the event that the drug company failed to make such payment.

Trial was had before the court. Findings of fact were made and judgment entered in favor of the plaintiff and against the defendant bank for the full amount claimed, to wit, $8,074.78, and ten per cent. of that amount as attorney's fee, which was adjudged to be a reasonable attorney's fee, and for interest. From that judgment the defendant bank appeals to this court.

Numerous assignments of error are made by appellant, and, in the language of the respondent's brief, "appellant has assigned errors to substantially every step taken or act done leading to the judgment in this cause." However, the points chiefly argued, and which, in our judgment, are the only ones necessary for the determination of this appeal, may be conveniently stated thus: (1) Was or was not the action of the president of the bank in executing the writing, which is an attempt to guarantee the payment of the rent stipulated to be paid by the drug company to the plaintiff in the written lease attached to the complaint, ultra vires as to the bank? (2) Was the fact of executing the said guaranty ultra vires and beyond any authority delegated by express act of the bank or its officers to Clark, as president or otherwise, and therefore not binding upon the bank? (3) Were the acts or methods of doing business by the bank, or its officers, such as would estop the bank from denying the authority of its president to bind it by the act taken and done by him?

There is but little conflict in the testimony upon the main issues in this case. The defendant bank was organized under the laws of this state for the purpose of carrying on a banking business, and any powers exercised by it were such powers as it had under its articles of incorporation and the statute defining the powers of banking corporations. The clause stating the objects of the bank, as shown in the record, and which is not disputed, is as follows:

"The business agreed upon and for the pursuit of which this corporation is formed is the banking business in all its

branches, including both commercial and savings bank departments, in Salt Lake City, Utah, and to carry out said purpose this corporation shall have power to receive and hold moneys and deposits, to loan moneys, to discount, purchase, take, hold, own, deal in and sell and dispose of notes, bonds, commercial paper, debentures, and all other evidences of value or indebtedness and all kinds of collateral security pertaining thereto; also to collect interest on loans and pay interest on deposits, also to receive, purchase, take, own, deal in and foreclose any and all manner of liens, mortgages, pledges and securities, both real and personal, to protect or secure any loan, discount, advance of money or business this corporation may make or engage in, also to make any and all contracts necessary or proper to carry out any of the above powers. This corporation may lease, or purchase and own and hold all lands and buildings, furnishings, and fixtures necessary or proper for its use in conducting its business; and this corporation may also purchase on foreclosure or execution sale, and acquire to protect its demands, and own such other lands and buildings and real property, and property of all kinds, as it may find necessary or proper to acquire in the due course of its business above mentioned; this corporation may also install in its banking house or houses, safety deposit boxes and vaults and may also rent the same to the public; and it shall also have the power, rights and privileges belonging to a banking corporation under the laws of the state of Utah, or under the customs and usages of banking.''

Article 9 of the articles of incorporation is in the following words:

''The officers of this corporation shall consist of a board of seven directors, a president, a vice president, a secretary and a cashier, all of whom shall be elected by the stockholders at their first annual meeting, and annually thereafter.''

Article 10 of the by-laws of the said defendant corporation is as follows:

''The president shall preside at all meetings of the directors of said corporation. He shall have general supervision and management of the affairs of said corporation, subject to the

control of the board of directors, and shall sign and acknowledge all releases of mortgages, and liens in favor of said corporation, as well as all other instruments to be signed by said corporation in its ordinary course of business, and said president shall have such other and further duties as may be imposed upon him by the board of directors.''

It is always advisable and, in fact, necessary, in attempting to determine the powers of a corporation or other body created by law, to examine the fundamental law of the state by virtue of which such bodies exist, and ascertain, if possible, the powers intended to be given to and to be exercised by such legal entities. Article 12, section 10, of the Constitution of this state limits the powers of corporations to the authorized objects expressed either in the object clause or in the positive statute of the state. The language of that section is:

''No corporation shall engage in any business other than that expressly authorized in its charter, or articles of incorporation.''

This court, in an early case under statehood (*Seeley* v. *Canal Company*, 27 Utah, 179, 75 Pac. 367), adopted the rule that a corporation in the management of its affairs and conduct of its business is limited to the purposes provided and enumerated in the object clause of its articles of incorporation. In fact, under the provisions of the Constitution aforesaid, it would seem that no other rule or construction was permissible in this jurisdiction. The principle stated in that case is, at least by inference, reaffirmed in *Christensen* v. *Realty Co.*, 42 Utah, 86, 129 Pac. 412.

Banks, of necessity, are quasi public corporations. While they are organized for profit, nevertheless not only the stockholders but the depositors are interested in the management and control of such institutions, and have **2, 3** the right to assume that such banking corporations will not engage in any business or enterprise not connected with the powers given it under the law or reasonably implied from the powers expressed. Implied powers of a bank, or of any corporation for that matter, are those incidental to and connected with the carrying into effect or the accomplish-

ing of the general purposes of the corporation, as expressed in the object clause of its articles. When it has been determined that the acts done, or attempted to be done, are not within the powers of the corporation to do, no implied powers can validate such acts. *State* v. *Newman,* 51 La. Ann. 833, 25 South. 408, 72 Am. St. Rep. 477; Clark & Marshall, Corp. section 128. Since the corporation itself could not execute the contract in question, it could not, by any act, delegate such authority to its officers. *Sturdevant Bros. & Co.* v. *Farmers' & Merchants' Bank,* 62 Neb. 472, 87 N. W. 156; *Lucas, Cashier, etc.,* v. *White Line Trans. Co.,* 70 Iowa, 541, 30 N. W. 771, 59 Am. Rep. 449; *Norton* v. *Derry Nat. Bank,* 61 N. H. 589, 60 Am. Rep. 334.

We now have to consider whether, under the circumstances and facts as disclosed by this entire record, there had been such acts on the part of the bank or its officers that the bank should now be estopped from disputing the authority of the defendant Clark, president of said bank, to enter into and execute the written guaranty that he did execute as shown by the findings and admitted facts in this case. An effort was made all through the hearing to show that Clark had been given and allowed the right to conduct the affairs of the bank in such manner, and to adopt such methods, as he might determine, regardless of any action or control over the bank by the directors or its other officers. Upon a careful examination of not only the abstract, but of the transcript, which contains all the testimony heard and considered by the court, we are unable to find any acts on the part of the bank or its directors that would warrant the conclusion or finding that the president of the bank had any authority to enter into the contract of guaranty which is the basis of plaintiff's cause of action. It is true that the defendant Clark, president of the bank, was given liberal authority in lending the funds of the bank and in the management of its business, but there is no hint in the record that he was authorized or permitted to engage in any business, or to expend the bank's money, or to lend its credit for any other purpose than what might be considered legitimate busi-

ness for a bank engaged in commercial banking. It was attempted to be shown that defendant Clark had rented property not immediately used by the bank in conducting its. business; but it appears that such property had been leased direct to the bank, was located either over the first floor where the bank was situated, or property situated contiguous to it on either side and located on the same lot, and was the property of the same landlord who owned the bank building, and that the bank took these leases for the purpose of making profit and, in a measure, to control its neighbors, that is, to determine the class of neighbors which should occupy the premises adjoining the bank building. Those leases ran directly to the bank, and were not for the benefit of any third person, and were not an effort to lend the bank's credit to a third party. It is further definitely established that the officers of the bank knew nothing about the acts of its president, H. P. Clark, in executing the written guaranty until several months after the paper had been executed, and that, immediately upon learning of the act of its president, the board of directors repudiated such attempted acts on the part of its president, passed a resolution repudiating the same, and declared that the president had exceeded his authority in signing the paper, and notified the plaintiff of its action. It is true that the contract had been fully executed, but it is also true that the president of the plaintiff corporation knew that the powers of the defendant corporation were limited. In his testimony Mr. Tracy, the president of the plaintiff corporation, stated:

"At the time I was dealing with the Merchants' Bank in relation to this so-called guaranty I had had dealings for many years with corporations. I was familiar with the fact that corporations have limited powers, and familiar with the fact as to how those powers were limited; that is, that they had to prepare and file articles of incorporation with the secretary of state. Yes, in a measure I was familiar with the fact that a corporation cannot exercise any power except the power that was expressly granted to them in their articles of incorporation. I did not at any time prior to the execution

of this guaranty consult the records of the secretary of state's office to find what the corporation powers of the Merchants' Bank were.''

Mr. Tracy, the president of the plaintiff corporation, who testified as above set out, knew the limited authority of defendant corporation, and if not bound by the provisions of the articles of incorporation, which we think he was, as that is a matter of public record, the plaintiff would at least be bound by the provisions of the statute which define its corporate powers. ''Strangers or third persons are presumed to know the law of the land, and are bound, when dealing with corporations to know the powers conferred by their charters.'' *Nicollet National Bank* v. *Frisk-Turner Co.*, 71 Minn. 413, 74 N. W. 162, 70 Am. St. Rep. 334.

Plaintiff contends, and the court found, that at the execution of the alleged written guaranty valuable securities were left with the defendant bank to indemnify it against any loss it might sustain by reason of executing the guaranty. The testimony on that point is not at all clear or satisfactory. It appears that one J. P. Treasurer, the president of the drug company, and who procured the signature of defendant Clark to the guaranty, was at that time indebted to the bank on his personal account, and the bank held his notes for something like $4,500; that whatever securities the bank held had been left long prior to the date of the alleged guaranty with the bank to secure the personal indebtedness of said Treasurer. It also appears that much of the security, which consisted of corporate stock, was not the property of Treasurer, but was the property of his wife and his brother, and that they had loaned him such securities to pledge as collateral for his individual indebtedness, and he had no authority to pledge that security to secure any obligation of the drug company. It is true that there was some stock belonging to Treasurer which was then at the bank, which, according to the testimony, he stated to defendant Clark could remain with the bank. The bank should not be permitted to profit by any securities left with it to secure it against loss by reason of executing the alleged guaranty, but

the act itself, being beyond the authority of the bank, could not be binding upon it, and no judgment could be rendered against it. The bank should be required to account for any securities, if any, which it holds to indemnify it against loss.

There is much force in the contention of the plaintiff that by reason of the acts of the president of the bank in executing this written guaranty it, the plaintiff, has obligated itself and will sustain loss. It must be held that plaintiff accepted the guaranty, knowing that the bank had no power to execute such a paper, and that others besides the president of the bank were interested whose rights had not been consulted and whose rights were liable to be jeopardized, not only stockholders, but depositors as well. If there is to be no limit placed upon banking institutions in lending their credit to such schemes or enterprises as the executive officers of the bank may deem advisable, then the confidence of the public in banking institutions will be greatly impaired, and the legitimate and proper functions of banks turned into devious channels of speculative investments.

We have not attempted to review in this opinion the numerous authorities cited by both the appellant and the respondent in their very able briefs and arguments presented to the court. To do so would require an examination of the Constitutions of the different states and the statutes under which such banking institutions were operating, which would be a useless and a burdensome task and would serve no good purpose, in view of the provisions of our own Constitution and the decisions of this court.

It follows that the lower court erred in not sustaining the defendant's motion for a nonsuit and in overruling its motion for a new trial. The cause is therefore reversed, with directions to the lower court to grant the defendant bank a new trial. Appellant to recover costs on this appeal.

McCARTY, CORFMAN, and THURMAN, JJ., concur.

FRICK, C. J.

I concur. I desire to state, however, that I base my concurrence upon the ground that the act of Clark in executing the

written guaranty, under our Constitution and statute, was entirely beyond his power; and upon the further ground that the written guaranty was also beyond the power of the bank. I desire to add, further, that, although the guaranty is void for the reason stated, and, therefore, the bank cannot be held legally liable, yet if the bank has received any property or funds as a part of the ultra vires transaction, it should be made to account for the same. In my judgment the doctrine of estoppel is not involved in this case.