In the Matter of JOHN RICH ENTER-
PRISES, INC., a Delaware corpora-
tion et al., Debtors-Appellee.

Emanuel Fields, Claimant-Appellant.

No. 72–1514.

United States Court of Appeals,
Tenth Circuit.

June 27, 1973.

William G. Fowler, Salt Lake City, Utah, for debtors-appellee.

M. Emanuel Fields, New York City, pro se, claimant-appellant.

Before PICKETT, SETH and Mc-WILLIAMS, Circuit Judges.

PICKETT, Circuit Judge.

The issue presented by this appeal arises out of a claim for attorney fees wherein several corporations with common directors and officers sought a reorganization under Chapter X of the Bankruptcy Act. The district court approved the claim in part as it applied to the corporation for whom the legal services were rendered, but entered judgment against claimant Fields for recovery of $20,000 of a total of $30,000 which had been paid by one of the other corporations. Limiting his appeal to the money portion of the judgment, Fields contends that the payment was authorized and was later approved by formal action of the board of directors.

John W. Rich had patents or applications for patents for a water bumper device and for a product described as a television or movie chair. John W. Rich Manufacturing Company, a California corporation, was created for the purpose of manufacturing and distributing the water bumper product. The distribution was accomplished by the sale of franchises throughout the United States and abroad.[1] International Movie Chairs, Inc. (I.M.C.), a California corporation, was formed to promote the manufacture and sale of the television or movie chair device and its funds were raised from public investors. The directors and officers of these two corporations were the same and their businesses were conducted in the same building in Sacramento, California, and generally by the same employees.

Through an arrangement between the two corporations the Rich Manufacturing Company, for an agreed consideration, manufactured the chairs for I.M.C. Financial difficulties developed in the water bumper business. To overcome these difficulties the board of directors of the manufacturing company decided to form John W. Rich Enterprises, Inc., a California corporation, for the purpose of eliminating the franchise operation by substituting stock of the new corporation for the franchises and to raise additional funds by a public offering of stock. This project failed and C. Allen Elggren, a Salt Lake City lawyer who was a director, officer and general counsel for all the corporations, recommended that appellant Fields, a New York attorney and expert in the field of corporate financing, be employed to obtain the necessary authority for a public offering of stock in John W. Rich Enterprises, Inc. of California.

In April, 1969, Fields met with the board of directors of John W. Rich Enterprises, Inc. in Sacramento, California. At this meeting Fields agreed to undertake the task of obtaining the necessary authority for a public offering of securities in John W. Rich Enterprises, Inc. for a fee not to exceed $50,000, of which $10,000 was to be paid immediately. The offer of employment was accepted by the board, and upon return to Salt Lake City Elggren delivered a check to Fields for $10,000 drawn upon the account of I.M.C.

It was determined that the better procedure was to organize a Delaware corporation under the name of John W. Rich Enterprises, Inc. and to file the necessary information with the Securities Exchange Commission for authority to sell publicly the stock of the Delaware corporation. The new corporation was created and Fields proceeded to obtain the required material for SEC approval. Fields also circularized the holders of the water bumper franchises notifying them of the proposed plan to exchange stock for franchises.[2] During the course of these activities and at the suggestion of Elggren, Fields billed I.M.C. for addi-

---

1. In April of 1969 approximately 2,500 franchises had been sold.

2. The California Corporations Commissioner held this circulation to be illegal and issued a cease and desist order.

tional attorney fees, and through checks drawn by Elggren, I.M.C. paid $20,000 over and above the original $10,000.

The SEC brought a federal court action in California against the corporations, Fields and others, charging violations of the federal securities laws. A consent decree was entered in this case enjoining the activities of John W. Rich Enterprises, Inc. in regard to its securities. Apparently as an outgrowth of the consent decree, all of the Rich corporations, including I.M.C., then were joined in Chapter X Bankruptcy proceedings instituted in the State of Utah seeking an acceptable reorganization. It was in these proceedings that Fields filed a claim for additional attorney fees.[3] The trustee denied the claim and sought recovery of the $30,000 paid to Fields from the funds of I.M.C.[4]

The validity of Fields' claim and the trustee's counterclaim was tried in the United States District Court for the District of Utah. The trial court's finding that there was no agreement, express or implied, for performance of legal services for I.M.C. by Fields and that no professional services were rendered for and on behalf of that corporation by Fields is sustained by the evidence. The testimony of Fields and Elggren was that Fields had not been employed by I.M.C. and performed no service for it. The record is barren of evidence that I.M.C. received any consideration or benefit from the work of Fields.[5] On this evidence the court held that the payments to Fields by I.M.C. were unauthorized and ultra vires acts of that corporation. The counterclaim for the original $10,000 payment was disallowed on the basis that the trustee was estopped to recover that amount and judgment was entered in favor of the trustee for later payments totaling $20,000. The claim of Fields as against John W. Rich Enter-

---

3. After the institution of the federal proceeding by the Securities Exchange Commission, the board of directors of I.M.C. adopted a resolution ratifying all of the payments to Fields.

4. Of the various corporations, I.M.C. was the only one that had any liquid assets, and those assets were derived from public investors in that corporation.

5. With reference to the ratification resolution, Exhibit 5–I, Elggren testified:

THE COURT: Then I can't understand this recitation in 5–I [Exhibit 5–I is the resolution of the board of directors ratifying the payment to Fields], just before the Court that we've been discussing:

"Resolved, that actions of the officers in paying over the following funds to Emanuel Fields for anticipated Securities and Exchange work on behalf of the corporation and John Rich Enterprises as set forth above and are hereby ratified."

Now, just before that, as above stated, it is recited that "The chairman—" That would be you, wouldn't it?

THE WITNESS: Yes.

THE COURT: And then: "—stated on the 29th of April 1969, there had been certain funds paid over to Emanuel Fields, attorney at law, in connection with a proposed filing of registration statement on behalf of John

Rich Enterprises, Inc., and a separate registration statement on behalf of International Movie Chairs—"

Was that true that there were funds paid over for a separate registration statement on behalf of International Movie Chairs, or was that just a check to try to justify this payment?

THE WITNESS: Well, as I—your Honor, I was stating that with respect to International Movie Chairs, there had been contemplated, and if these things had gone along the way—

THE COURT: But in the April conversation it was suddenly, "No funds paid over for any services to International Movie Chairs"?

THE WITNESS: No.

THE COURT: Why does this appear in this recitation?

THE WITNESS: I don't—I can't give you an answer.

THE COURT: It's just sort of a cloak or a mask to conceal what actually occurred; is that true?

THE WITNESS: The purpose of it, of course, was to ratify at least the general acts of authorization that—

THE COURT: But there couldn't be a ratification if there were a dishonest disclosure or an inaccurate disclosure, could there?

THE WITNESS: That's probably right. That's right.

prises, Inc. (Delaware and California) was approved in part.

I.M.C. is a corporation separate and distinct from the other Rich corporations and created for different purposes. Its assets were obtained from different sources. It is the general law, as well as that of California and Utah, that in the absence of statute or corporate charter provision a corporation cannot divert its property by gift or by indirect means without a consideration or benefit to the corporation, and such acts cannot be ratified by the board of directors. In Knox v. First Security Bank of Utah, 196 F.2d 112, 117 (10th Cir. 1952), this court said:

It is well settled in Utah and elsewhere that a corporation cannot bind itself as guarantor or otherwise to discharge an obligation solely for the benefit of another, unless that be one of the purposes for which the corporation was organized. In the absence of a statute or a provision in its charter authorizing it to do so, an undertaking on the part of a corporation to discharge the obligation of another in which it has no interest and from which it derives no benefit is ultra vires and therefore unenforceable. Tracy Loan & Trust Co. v. Merchant's Bank, 50 Utah 196, 167 P. 353; Louisville, New Albany & Chicago Railway Co. v. Louisville Trust Co., 174 U.S. 552, 19 S.Ct. 817, 43 L.Ed. 1081; Williams v. Sawyer Bros., 2 Cir., 45 F.2d 700; Pantaze v. Murphy, 5 Cir., 54 F.2d 895, certiorari denied, 287 U.S. 599, 53 S.Ct. 10, 77 L.Ed. 522. And it is elementary that unless authorized by statute or effective charter provision expressly creating the power, a corporation organized solely for conventional business or commercial purposes may not alien its property by gift or indirect channels of diversion without consideration and not in furtherance of its pecuniary interests. 6 Fletcher Cyclopedia Corporations, §§ 2938, 2939. The alienation or disposition of property of a corporation in that manner constitutes

a violation of the rights of the stockholders and is ultra vires.

See also, McCormick v. Market Bank, 165 U.S. 538, 17 S.Ct. 433, 41 L.Ed. 817 (1897); S. E. C. v. Insurance Securities, Inc., 254 F.2d 642 (9th Cir.), cert. denied, 358 U.S. 823, 79 S.Ct. 38, 3 L.Ed.2d 64 (1958); Knox v. First Security Bank of Utah, 206 F.2d 823 (10th Cir. 1953); Elliott v. Federal Home Loan Bank Board, 233 F.Supp. 578 (S.D.Cal.1964), rev'd on other grounds, 386 F.2d 42 (9th Cir. 1967), cert. denied, 390 U.S. 1011, 88 S.Ct. 1260, 20 L.Ed.2d 161 (1968); Burt v. Irvine Co., 237 Cal.App.2d 828, 47 Cal.Rptr. 392 (1965); Elggren v. Woolley, 64 Utah 183, 228 P. 906 (1924); 2 Fletcher Cyc.Corp. § 752 (Perm.Ed. 1969); 7 Fletcher Cyc.Corp. §§ 3426, 3428 and 3432 (Perm.Ed.1964).

Finding no error, we affirm the judgment.